George W. BROWN, III as Individual and as President of Electrical Industries, Inc., Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent.

George W. BROWN, III as Individual and as President of Electrical Industries, Inc., Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 19, 1995.

Decided Feb. 1, 1996.

---

Frank B. Baldwin, III, for Petitioner.

Ronald H. Skubecz, Senior Deputy Attorney General, for Respondent.

Before COLINS, President Judge, SMITH, J., and MIRARCHI, Senior Judge.

SMITH, Judge.

George W. Brown, III (Brown) petitions for review of two orders of the Board of Finance and Revenue (Board) sustaining sales and withholding tax assessments against him pursuant to the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–10004.[1] The issue presented is whether the Board erred in determining that Brown was a "responsible individual" with personal liability for both sales and withholding taxes collected by Liberty Bank, N.A. (Bank) after it confiscated the accounts receivable and all other assets of Electrical Industries, Inc. (EII).

The stipulation of facts prepared in accordance with Pa.R.A.P. 1571(f) establishes that between January 1988 and September 1989, Brown was chairman, president, chief executive officer and 50% shareholder of EII, a Pennsylvania S corporation trading as Gold Seal Electric Supply Company. Brown's responsibilities encompassed the general management of EII, including its operations and finances. In May 1988, EII entered into a loan and security agreement (Security Agreement) with the Bank, granting the Bank first security interest in all assets of EII, including receivables and inventory. The Security Agreement provided that in the event of a default, the Bank had the right, among other things, to take possession of EII's assets and to liquidate them. As of June 1, 1989, EII owed the Bank $4.2 million; that same month, EII defaulted. Pursuant to the Security Agreement, the Bank instructed EII to render to the Bank all monies that it received, instructed EII's customers and debtors to make payments directly to the Bank and took complete control of EII, to include paying wages to EII's employees. During this period, Brown continued to work, without pay, at EII's offices until September 1989.

The stipulations further establish that the Bank failed to pay sales and withholding taxes for the period set forth in the tax

1. Docket No. 466 F.R.1991 concerns the sales tax assessment, and No. 467 F.R.1991 concerns the withholding tax assessment.

assessments without Brown's knowledge and that Brown was not in a position to obtain that knowledge. Brown did not have EII's records and the Bank declined to disclose the information to him. The Bank applied all proceeds it obtained toward the debt owed to the Bank and none toward EII's outstanding tax liability. EII discontinued operations in October 1989.

Based on Brown's role as a responsible corporate officer of EII, the Department of Revenue sent him two notices of assessment. The first notice was for sales tax collected but not remitted by EII from March 1, 1989 through December 1, 1989. The sales tax assessment was $68,260.12, consisting of a sales tax of $56,331.93, a penalty of $5,557.07 and interest of $6,371.12. The second notice was for withholding tax collected but not remitted by EII during the second quarter of 1989. The withholding tax assessment was $580.25 and was derived by subtracting the total deposits of $5,014.82 from the tax liability of $5,377.83, then adding a penalty of $181.51 plus interest of $35.73. Both assessments were upheld by the Department of Revenue. On further appeal, the Board ultimately sustained the tax assessments.

## I.

A review by this Court of the Board's determinations is governed by Pa. R.A.P. 1571. Although the Court hears such cases in its appellate jurisdiction, it functions essentially as a trial court. *Armco, Inc. v. Commonwealth,* 654 A.2d 1191 (Pa.Cmwlth. 1993). The stipulation of facts prepared in accordance with Pa.R.A.P. 1571(f) is binding and conclusive; however, this Court may draw its own legal conclusions based upon those facts. *Norris v. Commonwealth,* 155 Pa.Cmwlth. 423, 625 A.2d 179 (1993).

Sales tax provisions are found in Article II of the Tax Code. A sales tax of 6 per cent of the purchase price is imposed upon each separate sale at retail of tangible personal property or services; the tax must be collected by the vendor and paid to the Commonwealth. Section 202(a) of the Tax Code, 72 P.S. § 7202(a). Section 225 of the Tax Code, 72 P.S. § 7225, provides that this sales tax

"shall constitute a trust fund for the Commonwealth" and that the tax is enforceable against any person who collects such taxes, his representative or any other person receiving any part of the tax. The term "person" is defined as "[a]ny natural person, association, fiduciary, partnership corporation or other entity...." Section 201(e) of the Tax Code, 72 P.S. § 7201(e). Whenever the term is used in any clause that imposes a penalty, fine or imprisonment, the term includes the officers of a corporation. *Id.*

Withholding provisions are found in Article III of the Tax Code. An employer is required to deduct and withhold from the compensation it pays its employees an amount substantially equal to the estimated tax due on the employee's compensation. Section 317 of the Tax Code, added by Section 4 of the Act of August 31, 1971, P.L. 362, 72 P.S. § 7317. As in Article II, Article III also provides that "[a]ll taxes deducted and withheld from employes pursuant to this article ... shall be enforceable against such employer, his representative or any other person receiving any part of such fund." Section 320 of the Tax Code, added by Section 4 of the Act of August 31, 1971, P.L. 362, 72 P.S. § 7320.

## II.

Before this Court Brown contends that an individual who loses the power to control the payment of a corporation's funds ceases to be personally liable for the collection and payment of that company's sales and withholding taxes. In *City of Philadelphia v. Penn Plastering Corp.,* 434 Pa. 122, 253 A.2d 247 (1969), a case concerning the failure of corporate officers to pay city wage taxes, the Pennsylvania Supreme Court stated:

[A] corporation which in the course of its operations collects taxes as an agent for a city and fails to pay same over to the city is trustee *ex maleficio.* Its officers are all trustees *ex maleficio* and are responsible together with the corporation where they were responsible for the performance of the duty to collect the taxes and were in control of the corporation's funds and tax accounts....

To hold otherwise would be to disregard the undisputed fact that corporations must act through individuals and where the individuals are the active and controlling officers and agents of the corporation and they fail to administer the trust responsibilities of the corporation, those responsibilities are imposed upon the individuals who are responsible for the performance of the trust duty.

*Id.* at 125, 253 A.2d at 249.

In *City of Philadelphia v. B. Axe Co.*, 40 Pa.Cmwlth. 257, 397 A.2d 51 (1979), this Court reviewed another case where a company failed to pay Philadelphia wage taxes and found it to be controlled by *Penn Plastering Corp.* The *B. Axe Co.* Court listed several factors it considered in determining whether substantial evidence existed to support a conclusion that the appellant was the active and controlling corporate officer so as to be deemed a trustee *ex maleficio.* The factors included physical presence on the premises at relevant times, ability to hire or fire employees, review and signing of tax returns, signing payroll checks, signing checks for expenses, obtaining loans, consulting the company's books and acting as an administrator or manager.

In the case sub judice, the stipulated facts indicate that for the initial period of assessment, from March 1, 1989 to early June 1989 when the Bank took complete control over EII, Brown remained an active and controlling officer at EII. During this time Brown was president, chief executive officer and 50 per cent shareholder of EII; and he was responsible for the general management of the business, including its financial affairs. Accordingly, for this period Brown must be held personally liable for EII's unpaid sales and withholding taxes.

However, with regard to the period after the Bank took complete control of EII, this Court concludes, in view of the factors discussed in *Penn Plastering Corp.* and *B. Axe Co.*, that there is insufficient evidence to support a determination that Brown could be held personally liable for the collection and payment of taxes as a trustee *ex maleficio.* Specifically, the parties stipulated that after the Bank took complete control of EII in early June 1989, the Bank notified all customers and other debtors of EII that all payments to EII were to be made directly to the Bank. The parties further stipulated that the Bank took complete control of the payment of wages to its employees, to the exclusion of Brown, and required that all payments have the Bank's prior approval. In other words, during this period Brown had no control over the financial operations of EII and his remaining presence at EII's premises is insufficient to render him liable for the sales and withholding taxes collected by the Bank.

The Commonwealth relies on *Yurick v. Commonwealth,* 130 Pa.Cmwlth. 487, 568 A.2d 985 (1989), for the proposition that Brown may be held personally liable for sales and withholding taxes after the Bank took complete control over EII's financial operations. In *Yurick,* unlike the present case, the owners of a hot tub business attempted to avoid personal liability for the sales taxes they had collected by transferring their tax liability to a subsequent purchaser of their business. The Court held that the purchaser's agreement to pay the Yurick's sales tax deficiencies, even if approved by the Department of Revenue, did not extinguish the original owner's primary liability for the taxes they collected. Here, this Court has held that Brown is personally liable for the sales and withholding taxes collected while he was in control of EII. *Yurick* is therefore inapplicable in that Brown did not attempt to transfer an existing tax liability.

In view of the foregoing, Brown is liable for EII's unpaid sales and withholding taxes from March 1, 1989 until the date in early June 1989 when the Bank took complete control of EII.[2] Accordingly, the orders of the Board are reversed and the Department of Revenue is hereby ordered, consistent with this opinion, to reassess Brown's tax

**2.** In his brief, Brown cites a number of federal tax cases to support his contention that he should not be held personally liable in this matter. These cases are not controlling; they represent decisions from federal courts of other jurisdictions and concern the interpretation of federal tax statutes as well.

liability from March 1, 1989 until the Bank's takeover of EII's operations, *see Halco (Mining) Inc. v. Board of Finance and Revenue,* 51 Pa.Cmwlth. 440, 414 A.2d 753 (1980). Specifically, the Department is directed to determine the exact date in June 1989 when the Bank took control over EII's financial operations and to recompute Brown's liability for collection of EII's sales and employee withholding taxes prior to that date.[3]

Electrical Industries, Inc. The Department of Revenue is hereby ordered, consistent with the foregoing opinion, to reassess Brown's tax liability from March 1, 1989 until Liberty Bank's takeover of Electrical Industries, Inc. Jurisdiction is relinquished.

The Chief Clerk is directed to enter this order as final unless exceptions are filed within 30 days in conformity with Pa.R.A.P. No. 1571(i).

### ORDER

AND NOW, this 1st day of February, 1996, the orders of the Board of Finance and Revenue are hereby reversed in regard to George W. Brown's liability for unpaid sales and withholding taxes collected after Liberty Bank took control over the operations of

---

**3.** As a result of Judge Newman's elevation to the Supreme Court of Pennsylvania, President Judge Colins was substituted for Judge Newman, subse-

quent to oral argument but prior to the final preparation of this opinion.