The CITY OF PHILADELPHIA

v.

GOINTERNET NET, INC. and Joseph C. Rocha and Neal D. Saferstein,

Appeal of: Joseph C. Rocha.

Commonwealth Court of Pennsylvania.

Argued March 6, 2007.
Decided Sept. 10, 2007.

588

Michael J. Engle, Philadelphia, for appellant, Joseph C. Rocha.

Marissa M. O'Connell, Philadelphia, for appellee, City of Philadelphia.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Joseph C. Rocha appeals a judgment entered against him in the amount of $707,832.05 by the Court of Common Pleas of Philadelphia County (trial court). The trial court held Rocha liable for the payment of 2003 wage taxes that his employer, GoInternet.Net, Inc., had withheld but never remitted to the City of Philadelphia. We conclude that the City ordinance that makes an employee vicariously liable for his employer's tax obligation requires the City to prove that the employee in question had the power to effect the timely payment of those taxes and was at fault for their non-payment. Finding the record to lack such evidence, we hold that Rocha cannot be held personally liable for his employer's non-payment of City taxes.

On January 28, 2004, GoInternet.Net, Inc. (GoInternet) filed an "Annual Reconciliation of Employer Wage Tax" for tax year 2003, stating that it owed the City $610,200 in taxes. The tax was not remitted by February 29, 2004, the due date for remittance. The City sought to collect the tax by filing a complaint that named GoInternet, Neal D. Saferstein, and Rocha as defendants.[1] The complaint demanded judgment for withheld wage tax due, interest and penalties in the amount of $707,832.

The essential facts are not in dispute. Rocha explained at the hearing that GoInternet designed and maintained websites for small businesses throughout the United States. It billed its customers monthly through local telephone carriers. In October 2002 Rocha was hired from a company in San Antonio, Texas to be GoInternet's controller. As controller, Rocha had responsibility for billing and collections, building on his experience with the collections clearinghouse company he had worked for in Texas. In February 2003, shortly after he moved his family from Texas to Pennsylvania, Rocha was promoted to Chief Financial Officer (CFO).[2]

---

1. The City entered a default judgment against Saferstein, president and CEO, on March 1, 2005. The status of the City's action against GoInternet is unknown.

2. Rocha later learned that his swift promotion was prompted by the indictment of GoInternet's former CFO, Ernest Micciche, for bank fraud in Tennessee. Reproduced Record at 103a. (R.R.——).

Rocha explained that as CFO he was "responsible for the financial and accounting reporting aspects of the company, including payroll production." R.R. 45a. Payroll production involved "collecting hours from our employees, calculat[ing] gross wages, calculating net tax withholdings for the various taxing authorities, and issuing checks to our employees for payroll." *Id.* GoInternet had 858 employees that resided in the City. However, Rocha was not assigned the responsibility of filing GoInternet's City tax returns or remitting City tax payments. Ernest Micciche, the former CFO, retained responsibility for City wage tax reports and remittances after he stepped down from the position of CFO. Saferstein divided the responsibilities in this way because Rocha had no knowledge of, or experience with, City taxes. In fact, Texas law did not authorize the taxing of earned income. Throughout 2003 Micciche remained responsible for all City wage taxes and remittances.

Consistent with this division of responsibility, Micciche negotiated a settlement with the City in April 2003 that resolved GoInternet's delinquent wage tax liability of $1,273,299.56 for tax years 2000, 2001 and 2002. The settlement agreement required GoInternet to make monthly payments of $91,757 in the form of a cashier's check that was hand-delivered to the City by Micciche. Supplemental Reproduced Record at 29b. (S.R.R.———). Each month, Micciche gave Rocha a receipt for the monthly payment of $91,757.

During 2003, GoInternet's business was adversely affected by litigation initiated against it by the Federal Trade Commission.[3] Some local telephone carriers stopped carrying GoInternet's business, and sales dropped by 8 percent. GoInternet's lender, Mercantile Capital, performed an audit in December 2003 that disclosed, *inter alia,* that GoInternet was behind in its payment of Federal, State and City payroll taxes in the amount of $5 million.

In response to GoInternet's auditors, Rocha prepared two checks in the amounts of $176,949.61 and $134,389.60, using Saferstein's signature facsimile to prepare the checks. The checks represented the City payroll taxes withheld for the two quarters of 2003. However, Micciche did not present them to the City, telling Rocha that

> we don't need to do that. We can do an annual reconciliation. That's the way it's been done in the past. That's all you need to do, an annual reconciliation, and it's due February 29th of 2004.

R.R. 116a. GoInternet's records confirmed that in 2002, City wage taxes were reported and paid annually, not quarterly.

On January 28, 2004, Rocha prepared GoInternet's 2003 "Annual Reconciliation of Employer Wage Tax;" it showed that GoInternet owed $610,200. Rocha gave this tax return and a check for $200,000 to Micciche for filing with the City. It was understood that Micciche would work out a payment plan to have the balance paid by the deadline of February 29, 2004.[4] Mic-

---

**3.** In November 2004, after protracted litigation, the United States District Court for the Eastern District of Pennsylvania entered judgment in favor of the Federal Trade Commission against GoInternet for approximately $55,000,000. GoInternet ceased doing business effective December 31, 2004. It is not known whether the company's debts were discharged in bankruptcy or whether the City has continued to pursue GoInternet.

**4.** The City's "Annual Reconciliation of Employer Wage Tax" form states that the amount owed by the taxpayer, GoInternet, had to be paid by February 29, 2004, in order to avoid penalties and interest. It does not advise that failure to pay by that date would result in the imposition of liability for taxes, penalties and interest upon employees of the taxpayer.

ciche negotiated a settlement with his contact at the City, Elliott Zayon, whereby the City agreed to forego 50 percent of the penalty in exchange for full payment of the tax by Friday, February 27, 2004. On February 11, 2004, Micciche communicated to Rocha by e-mail wherein Micciche stated that he promised Zayon

> payment by 2/27/04 hand delivered by [certified check] 200k in hand and hopefully less the 200k you will have me get tomorrow which will leave a final payment of 241k to be paid by bank [check] on the last friday of February[.] I will keep that day open to get the bank [check] and make sure it gets to [Z]ayon.

R.R. 27a. The terms of this settlement were confirmed in correspondence dated February 13, 2004, from Zayon to Micciche.

By mid-February, Mercantile Capital had assumed control of GoInternet's accounts at Wilmington Trust and refused to allow any account transfers that Mercantile Capital had not previously approved. On February 17, 2004, Rocha sent an e-mail to Mercantile Capital, as well as to Saferstein, explaining that the City wage taxes had been settled for $641,000 and that the first installment of $200,000 had been remitted.[5] He also explained that failure to remit the remainder by February 27, 2004, would result in the City rescinding the deal. In addition, Rocha explained that the City would consider a failure to pay $641,000 by February 27, 2004, to be a breach of the settlement of the 2000–2002 taxes. In response, Mercantile Capital directed Rocha not to pay the taxes. Rocha acknowledged that he retained the ability to use Saferstein's facsimile signature, which could have been used to generate a check in the amount of tax owed. However, Rocha explained that such a check "would not have been honored ... by Mercantile Capital." R.R. 135a. Mercantile Capital informed Rocha that it had engaged the services of Smart & Associates, LLP to negotiate all of GoInternet's tax liabilities, including the 2003 City wage taxes.

The trial court found that Rocha, as CFO, had significant control over GoInternet's finances and, thus, was a responsible person who could be held liable for the non-payment of GoInternet's wage taxes. The trial court also found that Rocha had willfully failed to remit wage taxes to the City. Thus, judgment in the amount of $707,832.05 was entered against Rocha. This appeal followed.

On appeal,[6] Rocha contends that the evidence does not support the trial court's judgment. Relying on federal case law interpreting the provision in the Internal Revenue Code on which the City ordinance is modeled, Rocha argues that undertaking the mechanical act of tax report preparation and being physically able to write checks are not enough to make an employee a "responsible person" and liable for his employer's non-payment of taxes. Micciche, not Rocha, was the person responsible for the payment of the 2003 City wage taxes. By February 2004, Mercantile Capital, not Rocha, was the responsible person. Similarly, Rocha argues the evidence does not support the trial court's conclusion that he acted willfully to effect the non-payment of GoInternet's wage taxes.

---

5. In fact, the check for $200,000 was either not presented to the City, or the check was not processed by GoInternet's bank, Wilmington Trust.

6. Our review is limited to determining whether the trial court abused its discretion, erred as a matter of law or rendered a decision unsupported by the evidence. *Aldhelm, Inc. v. Schuylkill County Tax Claim Bureau,* 879 A.2d 400, 403 n. 5 (Pa.Cmwlth.2005).

To the contrary, Rocha believes that the record shows that he tried to effect payment of the 2003 City wage taxes.

Relying on other federal case law, the City counters that responsibility is a matter of status, not knowledge, and Rocha, as GoInternet's CFO, had overall responsibility for GoInternet's finances. Therefore, he was responsible for the 2003 City wage taxes. It argues that willfulness is not a required element of their case against Rocha, but contends that, in any case, its evidence showed that Rocha acted willfully.

■■■ We begin with a review of the City ordinance that authorizes the imposition of a corporate employer's duty to remit wage taxes upon another, namely, a shareholder, director, trustee, officer or employee. Section 19–1507 of the Philadelphia Code states as follows:

(1) *Any person required to collect, truthfully account for, and pay over any tax imposed by this Chapter on salaries, wages, commissions and other compensation who fails to collect such tax, or truthfully account for and pay over such tax,* or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, *shall be liable for the full amount of such tax.*

(2) For purposes of subsection 19–1508(1)[sic] an *individual* or entity *that exercises significant control over the financial affairs of an employer,* including without limitation the disbursements of funds or determining the priority of payments to creditors, *is deemed to be a person required to collect,* truthfully account for, and pay over any tax imposed by this Chapter on salaries, wages, commissions and other compensation.

(3) For purposes of this section, *"person" includes a shareholder, director, trustee, officer or employee of a corporation,* or a partner or employee of a partnership, or the sole proprietor of a sole proprietorship, or a third party who makes either direct payment of wages to the employees of another or advances funds to pay the wages of the employees of another.

(4) More than one person may be liable under subsection 19–1507(1) with respect to the same employer, with each such person being jointly and severally liable for the full amount of the tax.

(5) This section is modeled upon Section 6672 of the Internal Revenue Code (26 U.S.C. § 6672), and *it is City Council's intent that this section be construed in the same manner that Section 6672 has been construed.*

Section 19–1507, THE PHILADELPHIA CODE (1995) (emphasis added). There can be no doubt that Rocha is a "person" within the meaning of Section 19–1507(3) because he was an officer of GoInternet. Similarly, as a CFO, Rocha exercised "significant control over the financial affairs" of GoInternet. At first blush, this would seem to make Rocha a "person required to collect" the City wage tax. Section 19–1507(2) and (3). However, Rocha contends that given the limited scope of his actual responsibility, he could not, even if he wanted to, pay the 2003 City wage taxes.

The City correctly notes that a statute's words must be followed and not disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b) (stating "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.") The application of this principle here is complicated by the instruction

that Section 19–1507 must be "construed in the same manner that Section 6672 has been construed." Section 19–1507(5), The Philadelphia Code. Thus, to determine whether Rocha was a person required to pay GoInternet's 2003 City wage tax and liable "for the full amount of such tax" requires an examination of how the Internal Revenue Code has been interpreted. Section 19–1507(1), The Philadelhia Code.

We turn, then, to the model for Section 19'–1507, which is Section 6672 of the Internal Revenue Code, 26 U.S.C. § 6672. It states, in relevant part, as follows:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). Although the words of Section 19–1507 and Section 6672 are not identical, the Philadelphia City Council has made those differences disappear by directing that Section 19–1507 be construed "in the same manner" as Section 6672. Section 19–1507(5), The Philadelphia Code.

■ The Federal courts have construed Section 6672 to identify a "responsible person"[7] as one required to collect, truthfully account for or pay over any tax due to the United States, but who willfully fails to do so. *Greenberg v. United States*, 46 F.3d 239, 242 (3d Cir.1994). Responsibility is generally considered to be a matter of status, duty, or authority, not knowledge. *Id.* at 243. Although a responsible person must have significant control over the corporation's finances, that control need not be exclusive. *Id.* Nevertheless, the question of an employee's control over an employer's finances is answered by considering the totality of the circumstances; no single factor, or the absence thereof, is determinative. *Fiataruolo v. United States*, 8 F.3d 930, 939 (2d Cir.1993). As has been explained, the "crucial inquiry is *whether the person had the 'effective power' to pay the taxes—that is, whether he had the actual authority or ability*, in view of his status within the corporation, *to pay the taxes owed*." *Vinick*, 205 F.3d at 8 (quoting *Barnett v. Internal Revenue Service*, 988 F.2d 1449, 1454 (5th Cir.1993)) (emphasis added).[8]

■ A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are

---

**7.** The term "responsible person" does not appear in Section 6672, but courts long have referred to the persons subject to liability under Section 6672 as "responsible persons." *See, e.g., Slodov v. United States*, 436 U.S. 238, 245 n. 7, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

In determining whether a person is responsible, the federal courts generally look to seven factors. *See, e.g., Vinick v. United States*, 205 F.3d 1, 8 (1st Cir.2000). A defendant is a responsible person if he is (1) an officer or member of the board of directors, (2) owns shares or possesses an entrepreneurial stake in the company, (3) is active in the management of day-to-day affairs of the company, (4) has the ability to hire and fire employees, (5) makes decisions regarding which, when and in what order outstanding debts or taxes will be paid, (6) exercises control over daily bank accounts and disbursement records, and (7) has check-signing authority.

**8.** An individual's responsibility during one tax period does not equate to responsibility in all tax periods. *Vinick*, 205 F.3d at 11. Because one's function and status can change between quarters, it would be erroneous to conclude that a person is responsible in one quarter based solely on evidence from another quarter. *Id.*

due. *Greenberg,* 46 F.3d at 244. Willfulness does not require the showing of specific intent to defraud the government, as is the case in criminal cases. *See, e.g., Burden v. United States,* 486 F.2d 302, 304 (10th Cir.1973) (a finding of willfulness appropriate where president was aware of company's financial difficulties and the company's default on taxes but chose to pay creditors other than the government). Willfulness is generally understood to be a "voluntary, conscious and intentional decision to prefer other creditors over the Government." *Denbo v. United States,* 988 F.2d 1029, 1033 (10th Cir.1993) (quoting *Burden,* 486 F.2d at 304).[9] However, Section 6672 does not impose absolute, or strict liability, on a responsible person. *Slodov v. United States,* 436 U.S. 238, 254, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). Stated otherwise, Section 6672 "was not intended to impose liability without personal fault...." *Id.*

We turn, first, to the City's contention that it was not required to prove willfulness on the part of Rocha in order to prevail. The City parses Section 19–1507(1) as listing three types of conduct that trigger liability: failure to collect the tax; failure to truthfully account for and pay the tax; or willful attempt to evade the tax.[10] The middle phrase "or truthfully account for and pay over such tax" does not contain the adjective "willful." Ac-

cordingly, the City contends that Rocha's willfulness was beside the point. We disagree.

■ First, it is hard to posit an untruthful act that is not willful. Second, the City's reading of Section 19–1507(1) ignores the directive in Section 19–1507(5) that Section 19–1507 be construed "in the same manner that Section 6672 has been construed." Section 19–1507(5), THE PHILADELPHIA CODE. The City does not, and cannot, direct the Court to a single case that has construed Section 6672 not to require willfulness on the part of the responsible person held liable for his employer's failure to pay a tax.[11] We reject the City's argument that willfulness was not an element of its case against Rocha. Accordingly, it was the City's burden to show that Rocha was (1) a "person," (2) "responsible" for the payment of the City wage taxes who (3) acted "willfully" in failing to remit them.

We turn, next, to Rocha's argument that he was not a responsible person within the meaning of Section 19–1507. Rocha acknowledged that he knew that GoInternet had to collect payroll taxes on behalf of the City. In 2003, Rocha was responsible for the withholding of all payroll taxes as part of his payroll production responsibility. He also acknowledged that he had access

---

**9.** This definition of willfulness has been adopted by every jurisdiction which has reached the issue. *Denbo,* 988 F.2d at 1033, n. 3. Although negligence does not give rise to section 6672 liability, the willfulness requirement can be met if the responsible person "(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily." *United States v. Vespe,* 868 F.2d 1328, 1335 (3d Cir.1989) (quoting *Sawyer v. United States,* 831 F.2d 755, 758 (7th Cir.(1987)). This reckless disregard includes the failure to investigate or correct mismanagement after be-

ing notified that withholding taxes have not been paid. *Greenberg,* 46 F.3d at 244.

**10.** Actually, the City's Brief is unclear as to which statute it parses. The phrase "or truthfully account for and pay over such tax" appears in both 26 U.S.C. § 6672 as well as Section 19–1507(1).

**11.** It has been suggested that imposing liability without fault violates "elemental fairness, if not constitutionality." *Phillips v. United States,* 73 F.3d 939, 946 (9th Cir.1996) (Reinhardt, J., dissenting).

to Saferstein's facsimile signature and, thus, could physically write checks during 2003, and even in 2004, on behalf of GoInternet. However, it was Micciche who had actual responsibility to pay the taxes in 2003; thereafter, it became the responsibility of Mercantile Capital. Rocha contends he cannot be a "responsible person" because he was never authorized or able to "pay over such tax." 26 U.S.C. § 6672(a); Section 19–1507(1), THE PHILADELPHIA CODE. The City rejoins that under Section 19–1507 there can be more than one responsible person, and therefore, it is of no moment that Micciche or Mercantile Capital may also be a responsible person.[12]

Section 19–1507(4) states that *"more than one person may be liable* with each such person being jointly and severally liable for the full amount of the tax." Section 19–1507(4), THE PHILADELPHIA CODE (emphasis added). Therefore, the City is correct that even if Mercantile Capital or Micciche were also found to be a responsible person, this finding does not in itself relieve Rocha of liability. However, we do not understand Rocha's argument to be that Micciche and Mercantile Capital have more culpability than Rocha and, therefore, Rocha should be excused.[13] Rather, Rocha argues that he never had the ability to remit payroll taxes to the City because first Micciche, and later Mercantile Capital, had this responsibility exclusively.

The question, then, is whether the evidence, read most favorably to the City, supports the conclusion that Rocha was a responsible person. As CFO, Rocha was specifically responsible for GoInternet's payroll production in 2003, and was aware that GoInternet withheld state, federal and city payroll taxes owed by its employees. Trial Court Opinion at 2, n. 1. Rocha also had authority to issue checks on behalf of GoInternet. Rocha prepared and signed GoInternet's 2003 Annual Reconciliation of Employer Wage Tax that was filed by Micciche. Rocha knew that the tax was not paid by the due date of February 27, 2004. Rocha, as CFO, had major responsibility at GoInternet. However, each responsible person case is decided on the totality of circumstances, with no one factor dispositive. *Fiataruolo,* 8 F.3d at 939. Considering all the circumstances here, Rocha was not a responsible person.

In *Dudley v. United States,* 428 F.2d 1196, 1201–1202 (9th Cir.1970), a corporate officer ceased to be a responsible person once he was stripped of responsibility for taxes. This describes Rocha's situation. Saferstein stripped Rocha of responsibility for City taxes from the day he assumed the title of CFO. Although Rocha had the status of one who can be held a responsible person, he never had "effective power" to pay the taxes over to the City. *Vinick,* 205 F.3d at 8. The appropriate focus is whether an individual with major responsibility in a corporation had

the final word as to that bills or creditors should or should not be paid and when ... Final word means significant

12. Section 19–1507(1) imposes liability on *"any* person required to collect, truthfully account for, and pay over any tax imposed by this Chapter." Section 19–1507(1), THE PHILADELPHIA CODE.

13. It is true that courts are reluctant to hold an individual responsible when there are more culpable individuals not before the

court *See, e.g., Unger v. United States,* No. 90 Civ. 0384(WK), 1999 WL 511768 (S.D.N.Y. 1999). Nevertheless, courts will assign liability on the less culpable defendant, who is before the court, if the person had the requisite control of the company's finances. *Howard v. United States,* 711 F.2d 729, 737 (5th Cir.1983).

rather than exclusive control over disbursement of funds.

*Matter of Brahm*, 52 B.R. 606, 608–609 (Bankr.M.D.Fla.1985) (emphasis added).[14] Rocha never had the last word on the disbursement of GoInternet funds *vis a vis* the City taxes; indeed, he had no word on their payment. *See De Alto v. United States*, 40 Fed. Cl. 868, 875 (1998) (controller who paid and negotiated taxes for corporate employer was not a responsible person because he could not choose among creditors).

Further, GoInternet's City wage tax for 2003 was not due until February 29, 2004, as was stated on the City's preprinted tax return form.[15] At that point Mercantile Capital had assumed control of GoInternet's accounts and forbade Rocha to pay the tax because it believed, apparently, that Smart & Associates would be able to negotiate a more favorable settlement. Mercantile Capital's control of GoInternet before the City wage taxes were due makes it impossible for Rocha to be a responsible person. Our analysis in *Brown v. Commonwealth*, 670 A.2d 1222 (Pa.Cmwlth.1996), is instructive here.

█ In *Brown*, we held that the president, CEO and principal shareholder could not be held liable for taxes as a *trustee ex maleficio* after the bank had taken control of the business.[16] In 1988, the company entered into a loan, the terms of which authorized the lending bank to take possession of the company's assets in the event of a default. In June 1989, the company defaulted, and the bank exercised this right. The bank did not remit sales and unemployment taxes; instead, it used all proceeds to pay down the company's debt to the bank. The Pennsylvania Department of Revenue assessed George W. Brown, III, the CEO and principal shareholder, for the company's sales and unemployment taxes that were owed for the period March 1, 1989, through December 1, 1989.

█ This Court held that Brown was liable for taxes collected from March 1, 1989, to early June 1989, but not thereafter when the bank took control. The fact that Brown remained employed after the bank took over was held to be of no moment because Brown lacked the actual ability, or "effective power," to achieve a different outcome on the payment of the taxes.[17] As was the case in *Brown*, Rocha

---

**14.** Notably, a responsible person may not avoid liability by delegating his responsibility to pay taxes to another person. *Guito v. United States*, 764 F.Supp. 1445, 1451 (M.D.Fla.1991). However, Rocha did not delegate the responsibility to pay City taxes to Micciche. Rocha never had that responsibility and, therefore, had nothing to delegate.

**15.** Although GoInternet could have remitted City wage taxes on a quarterly basis throughout 2003, it did not. One wonders why the City did not make such payment a condition of its 2003 settlement with GoInternet. The consequence of not paying quarterly is, apparently, the imposition of interest and penalties. It is the prerogative, apparently, of the taxpayer to pay in one lump sum, with interest. In any case, the City does not take the

position that GoInternet's 2003 City wage taxes were owed before February 27, 2004.

**16.** Under Pennsylvania common law, an individual can be personally responsible for corporate taxes under the doctrine of *trustee ex maleficio*. *City of Philadelphia v. Penn Plastering Corporation*, 434 Pa. 122, 125, 253 A.2d 247, 249 (1969). Responsible officers of a corporation who fail to remit the withheld taxes are all *trustees ex maleficio*, and they can be responsible. *City of Philadelphia v. Petherbridge*, 781 A.2d 263, 267 (Pa.Cmwlth. 2001).

**17.** This Court considered the factors used to determine officer liability on a theory of *trustee ex maleficio*. They include physical presence on the premises, ability to hire or fire employees, reviewing and signing tax returns,

lacked the actual ability to write a check to cover the 2003 City taxes on February 27, 2004, the final day for their payment under the settlement. The evidence is unrebutted that Mercantile Capital had control of the bank accounts by February 17, 2004.

We hold that the evidence does not support the conclusion that Rocha was a responsible person required to "truthfully account for, and pay over" City wage taxes. Section 19–1507(1), THE PHILADELPHIA CODE. He was stripped of any authority to decide when, where or how City wage taxes were to be paid over at the moment he accepted the position of CFO in February 2003. By the settlement deadline of February 27, 2004, Mercantile Capital had assumed control of GoInternet and its accounts at Wilmington Trust. The fact that Rocha could physically write checks is irrelevant because only checks authorized by Mercantile Capital would be processed. Under Federal precedent, the crucial inquiry is whether the employee had the "effective power" to pay the taxes, *Vinick*, 205 F.3d at 8, and in light of this Court's holding in *Brown*, we adopt the *Vinick* test as the one appropriate here. Responsibility means that one has the ability to make sure that a stop payment order will not be issued on any check drawn on an employer's account; Rocha lacked this power. Because the evidence does not support the finding that Rocha had effective power to pay the 2003 City wage taxes, he was not a responsible person who could be held liable under Section 19–1507(1).

■ Next, we consider Rocha's challenge to the trial court's finding of willfulness on the part of Rocha. The trial court did not explain the reasons for this conclusion, but the City offers an explanation in its brief. Essentially, it finds willfulness in the facts that Rocha knew that GoInternet taxes were due but not paid on February 29, 2004, and yet he wrote approximately 50 checks, or allowed them to be written, to other vendors in March of 2004. This evidence is not sufficient to prove willfulness.[18]

■ First, writing checks to non-governmental creditors is not enough. *In re Abel*, 200 B.R. 816, 824 (E.D.Pa.1996) (officer with check signing authority was only negligent, not willful, and thus not liable). It must be shown that when those checks were written the employee knew there were inadequate funds to also pay the government. *Emshwiller v. United States*, 565 F.2d 1042 (8th Cir.1977) (decision to pay wages knowing there were no funds to pay taxes was willful); *Newsome v. United States*, 431 F.2d 742 (5th Cir. 1970) (noting that willfulness is shown where officer consciously risks non-payment of taxes by paying other creditors). There is no evidence that in March 2004 GoInternet was not financially able to pay the 2003 City wage taxes. There is evidence that Mercantile Capital was looking for a better settlement for GoInternet but no evidence that GoInternet was not able to pay the City $641,000 by February 29, 2004.

---

signing payroll checks, signing checks for expenses, obtaining loans, consulting the company's books and acting as an administrator or manager. *Brown*, 670 A.2d at 1225.

18. It is beyond dispute that Rocha prepared the Annual Reconciliation of Employer Wage Tax for 2003; prepared a first installment check for Micciche to remit; and notified Mercantile Capital of the need to pay $641,000 by February 29, 2004. Rocha argues that this shows that he intended and tried to pay the City wage taxes. In any case, these facts are not consistent with the concept of "fault," as required in any Section 6672 case. *Slodov*, 436 U.S. at 254, 98 S.Ct. 1778.

598

Second, Rocha was stripped of power to write a check for the 2003 City wage taxes. If he had written the check, it would not have been processed. *United States v. Rem,* 38 F.3d 634 (2d Cir.1994) (employee forbidden to pay payroll taxes can negate finding of willfulness). Willfulness requires picking a private creditor in favor of the governmental creditor, and Rocha had no ability to make this choice. *De Alto,* 40 Fed. Cl. at 875.

In sum, Rocha was not shown to be at fault for GoInternet's failure to pay the City 2003 wage taxes. To so hold would make Rocha a guarantor and strictly liable for GoInternet's tax obligations, but a finding of willfulness requires fault. *Slodov,* 436 U.S. at 254, 98 S.Ct. 1778. The trial court erred in so holding.

For all these reasons, we reverse the trial court and vacate its judgment.

Judge COLINS did not participate in the decision in this case.

**ORDER**

AND NOW, this 10th day of September, 2007, the order of the Court of Common Pleas of Philadelphia County dated April 15, 2006, in the above captioned matter is hereby reversed.