# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey M. Mandler and Nuclear   :
Imaging Systems, Inc.,   :
      Petitioners   :
  :
    v.   :
  :
Commonwealth of Pennsylvania,   :   No. 483 F.R. 2014
      Respondent   :


Jeffrey M. Mandler and Cardiovascular   :
Concepts, P.C.,   :
      Petitioners   :
  :
    v.   :
  :
Commonwealth of Pennsylvania,   :   No. 484 F.R. 2014
      Respondent   :   Submitted: February 10, 2021


BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
     HONORABLE MARY HANNAH LEAVITT, Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY           FILED: March 3, 2021

  Before the Court are Jeffrey M. Mandler (Mandler), Nuclear Imaging Systems, Inc. (NIS) and Cardiovascular Concepts, P.C.'s (CVC) (collectively, Taxpayers) exceptions (Exceptions)[1] to this Court's March 2, 2020 Memorandum

---

[1] Pennsylvania Rule of Appellate Procedure 1571(i) states:

> Any party may file exceptions to an initial determination by [this C]ourt under this rule within 30 days after the entry of the order to which exception is taken. Such timely exceptions shall have the

Opinion and Order (March 2, 2020 Opinion) affirming the Board of Finance and Revenue's (Board) August 27, 2014 orders denying Taxpayers' Petitions for Refund (Refund Petitions) of the $180,168.46 Taxpayers remitted to the Pennsylvania Department of Revenue (Revenue) on July 31, 2013, to satisfy employer withholding liens.[2]  Therein, Taxpayers present three issues for this Court's review: (1) whether Taxpayers satisfied their burden of proving their entitlement to the $180,168.46 refund; (2) whether the United States Bankruptcy Court for the Eastern District of Pennsylvania (Bankruptcy Court) set aside the funds necessary for Taxpayers to satisfy their payroll tax obligations, and the Commonwealth of Pennsylvania (Commonwealth) was on notice that those funds were available; and (3) whether Taxpayers are entitled to prevail under the doctrine of estoppel by laches or collateral estoppel.  After review, this Court *en banc* overrules Taxpayers' Exceptions.

## Facts

On January 11, 2019, pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1571(f), Taxpayers and the Commonwealth submitted a joint Stipulation of Facts (Stipulation).[3]  According to the Stipulation, Mandler owned NIS

---

effect, for the purposes of Rule 1701(b)(3) (authority of lower court or agency after appeal) of an order expressly granting reconsideration of the determination previously entered by the court.  Issues not raised on exceptions are waived and cannot be raised on appeal.

Pa.R.A.P. 1571(i).

[2] The Board's August 27, 2014 orders were mailed on September 3, 2014.  *See* Taxpayers' Initial Br. Attachments.

[3] A review of determinations of the Board is governed by [Rule] 1571.  Although this Court hears such cases in its appellate jurisdiction, it functions essentially as a trial court.  Therefore, this Court must consider a record made by the parties specifically for the Court rather than one certified to the Court from the proceedings below.

*Armco, Inc. v. Commonwealth*, 654 A.2d 1191, 1192 (Pa. Cmwlth. 1993) (citations omitted).  Rule 1571(f) mandates that the parties "prepare and file a stipulation of such facts as may be agreed to[.]"

and CVC, which are Pennsylvania corporations with principal places of business in Malvern, Pennsylvania.[4]  *See* Stip. ¶¶ 3-4.  Pursuant to Sections 316(a) and 320 of the Tax Reform Code of 1971 (Code),[5] 72 P.S. §§ 7316.1(a),[6] 7320, Taxpayers were employers responsible for withholding their employees' payroll taxes in trust for the Commonwealth.  *See* Stip. ¶¶ 2-4.  On August 4, 2000, NIS and CVC commenced voluntary reorganization bankruptcy proceedings in the Bankruptcy Court, pursuant to Chapter 11 of the Bankruptcy Code.[7]  *See* Stip. ¶ 4.  On September 18, 2000, the Bankruptcy Court ordered the joint administration of NIS's and CVC's bankruptcy actions.  *See* Stip. ¶ 8.  On October 6, 2000, Revenue filed proofs of claim with the Bankruptcy Court seeking, among other taxes,[8] NIS's and CVC's Pennsylvania employer withholding taxes (Taxes).[9]  *See* Stip. ¶ 9, Stip. Ex. A.

---

Pa.R.A.P. 1571(f).  "The facts stipulated by the parties are binding and conclusive and should be regarded as this Court's findings of fact."  *Quest Diagnostics Venture, LLC v. Commonwealth*, 119 A.3d 406, 410 n.4 (Pa. Cmwlth. 2015), *aff'd*, 148 A.3d 448 (Pa. 2016).  "'However, this Court may draw its own legal conclusions.'"  *Am. Elec. Power Serv. Corp. v. Commonwealth*, 184 A.3d 1031, 1034 n.7 (Pa. Cmwlth.), *aff'd*, 199 A.3d 880 (Pa. 2018) (quoting *Kelleher v. Commonwealth*, 704 A.2d 729, 731 (Pa. Cmwlth. 1997)).  The parties declared in the Stipulation: "[N]o evidence of [] facts other than in this Stipulation need be adduced in this matter."  Stip. at 2.

Revenue is represented by the Commonwealth's Office of Attorney General, which has acted on Revenue's behalf throughout these proceedings.

[4] NIS was a Pennsylvania corporation and CVC was a Pennsylvania professional corporation.  *See* Stip. ¶¶ 3-4.

[5] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

[6] Added by Section 4 of the Act of August 31, 1971, P.L. 362.

[7] 11 U.S.C. §§ 1101-1195.  Mandler also filed for Chapter 11 bankruptcy on September 12, 2000.  *See* Stip. ¶ 7.

[8] The other taxes included corporate net income taxes, capital stock-franchise taxes and corporate loan taxes.  *See* Stip. Ex. A at 2, 7.

[9] In addition to the Taxes, NIS and CVC owed taxes to other creditors, including the Internal Revenue Service (IRS), the Pennsylvania Department of Labor & Industry, and state taxing authorities in Delaware, Maryland and New Jersey.  *See* Stip. ¶ 13, Stip. Ex. D.  By April 26, 2001 Amended Stipulation of Settlement and Order, Taxpayers settled the claims made by DVI Financial Services, Inc., National Century Financial Enterprises, Inc., NPF X, Inc., NPF VI, Inc., and the IRS.  *See* Stip. ¶ 10, Stip. Ex. B.

From October 29, 2000 to September 1, 2001, Revenue issued 10 assessment notices to NIS and Mandler (individually, and in his capacity as NIS's president) for their Taxes for consecutive tax periods from January 1, 1999 to June 30, 2001, plus interest and penalties, in the total amount of $110,331.60. *See* Stip. ¶ 14. Between October 29, 2000 and June 3, 2001, Revenue issued nine assessment notices to CVC and Mandler (individually, and in his capacity as CVC's president) for their Taxes for consecutive tax periods from January 1, 1999 to March 31, 2001, plus interest and penalties, in the total amount of $70,486.89. *See* Stip. ¶ 15.

On April 17, 2001, Taxpayers entered into an Amended Stipulation of Settlement and Order (Settlement Order) to resolve certain creditor claims, and to allow the sale of NIS's and CVC's assets to Integral Nuclear Associates, LLC (Integral) pursuant to an April 11, 2001 Asset Purchase Agreement[10] (as amended by the Settlement Order), which would facilitate reorganization.[11] *See* Stip. ¶ 10, Stip. Ex. B. Thereunder, Integral agreed to purchase certain of NIS's and CVC's assets out of bankruptcy, and to issue a "promissory note made payable to [Taxpayers] to fund payments to state taxing authorities."[12] Stip. Ex. B at 8. On May 1, 2001, Integral's counsel sent United Savings Bank, *inter alia*, $66,215.49 to be held in an interest-bearing state tax escrow account. *See* Stip. ¶¶ 37-38, Stip. Exs. R, S.

On June 8, 2001, Taxpayers filed a proposed Second Amended Joint Plan of Reorganization (Proposed Plan), in which they suggested in Section 4.2.B: "[Taxpayers] shall distribute $66,000[.00] to state taxing authorities. These claims

---

[10] The parties did not include the Asset Purchase Agreement as a Stipulation exhibit.

[11] In their brief to this Court, Taxpayers reference an April 17, 2001 Bankruptcy Court order which, in paragraph 4, "provides for a transfer of [Taxpayers'] assets [to Integral] . . . free of all liens." Taxpayers' Initial Br. at 12. However, the Settlement Order does not contain that language, and no such order is referenced in or attached to the Stipulation. *See* Stip. Ex. B.

[12] The amount of the promissory note specified in paragraph 10(b) of the Settlement Order is illegible. *See* Stip. Ex. B at 8. However, Taxpayers contend in their brief to this Court that the amount was $50,000.00. *See* Taxpayers' Initial Br. at 17. The amount was later amended to $66,215.49. *See* Taxpayers' Initial Br. at 17.

are estimated at $300,000[.00]. . . . Mandler shall make monthly payments to [Taxpayers] to pay any deficiency." Stip. Ex. P at 13; *see also* Stip. ¶ 35. Revenue objected to the Proposed Plan. *See* Stip. ¶ 36, Stip. Ex. Q.

On August 20, 2001, the Bankruptcy Court converted NIS's and CVC's bankruptcy actions to Chapter 7 liquidation proceedings.[13] *See* Stip. ¶ 11. Thereafter, Revenue filed amended proofs of claim - on September 14, 2001, against CVC and on November 15, 2001, against NIS - seeking the Taxes.[14] *See* Stip. ¶ 12, Stip. Ex. C.

On January 7, 2002, Integral's counsel instructed United Savings Bank to close out the state tax escrow account and forward the proceeds thereof (which was then $67,113.00) to Bankruptcy Trustee Christine Shubert (Trustee). *See* Stip. ¶ 39, Stip. Exs. T, U. Revenue did not receive any of the escrowed funds.

During 2002 and 2005, Revenue filed liens against Taxpayers in the Chester County Common Pleas Court. *See* Stip. ¶ 16, Stip. Ex. E. On May 18, 2005, Trustee issued her amended Chapter 7 Proposed Distribution of Property, pursuant to which the Trustee, on August 3, 2005, paid Revenue $1,043.29 relative to claims against CVC and $755.49 for claims against NIS. *See* Stip. ¶¶ 17-18, Stip. Exs. F, G. Those payments were not made in satisfaction of the Taxes or Taxpayers' other state tax debts.[15] On April 13, 2006, Trustee certified that the estate was fully administered - all bankruptcy estate money had been distributed to creditors and the bankruptcy estate accounts had zero balances. *See* Stip. ¶ 40, Stip. Ex. U.

---

[13] 11 U.S.C. §§ 701-784.

[14] Like in the original proofs of claim, the amended proofs of claim sought corporate net income taxes, capital stock-franchise taxes, and corporate loan taxes in addition to the Taxes. *See* Stip. Ex. C at 2, 7.

[15] According to the Trustee's itemized payment list, the $1,043.29 was paid on CVC's $22,343.31 administrative priority claim and $755.49 was paid on NIS's $16,158.09 administrative priority claim. *See* Stip. Ex. C at 2, 7; Stip. Ex. F at 7. The amended proofs of claim reflect that those administrative priority claims were made pursuant to Section 507(a)(1) of the Bankruptcy Code, 11 U.S.C. § 507(a)(1) (relating to trustee expenses and domestic support obligations). *See* Stip. Ex. C at 2, 7.

By July 30, 2013 letter, Revenue notified Taxpayers' counsel (Counsel) that Taxpayers' lien payoff figure was $180,168.46. *See* Stip. ¶ 19, Stip. Ex. H. Taxpayers remitted $180,168.46 to Revenue on July 31, 2013. *See* Stip. ¶ 20, Stip. Ex. I. On August 20, 2013, Revenue asked the Chester County Common Pleas Court to mark Taxpayers' liens as satisfied. *See* Stip. ¶ 21, Stip. Ex. J.

However, on November 13, 2013, Taxpayers filed the Refund Petitions with Revenue's Board of Appeals (BOA) seeking return of their $180,168.46, arguing that the Taxes had already been paid from the escrow account. *See* Stip. ¶¶ 22-24. On January 23, 2014, the BOA denied the Refund Petitions, stating relative to both NIS and CVC:

> [Taxpayers] filed for bankruptcy and [] an escrow account was established for the payment of state taxes. The record does not provide any evidence that notice of the escrow account was provided to [Revenue]. There is no evidence indicating that these funds were used to pay the outstanding state tax liabilities. In fact, [Revenue's] records indicate that [Revenue] did not receive payment from these escrowed funds. Accordingly, [Taxpayers] ha[ve] failed to prove that [they are] entitled to a refund.

Stip. Exs. K (BOA NIS Dec. at 2), L (BOA CVC Dec. at 2);[16] *see also* Stip. ¶¶ 25-26. On April 4, 2014, Taxpayers appealed to the Board. *See* Stip. ¶¶ 27-29.

On August 27, 2014, the Board denied the Refund Petitions. *See* Stip. Exs. M (Board NIS Dec. at 5), L (Board CVC Dec. at 4-5); *see also* Stip. ¶¶ 30-31. On September 24, 2014, Taxpayers appealed to this Court, which affirmed the Board's orders on March 2, 2020.[17] *Mandler v. Commonwealth* (Pa. Cmwlth. Nos.

---

[16] Taxpayers also requested abatement of the penalties and interest, which the BOA denied on the basis that Taxpayers were delinquent for 9 (CVC) and 10 (NIS) consecutive tax periods since 1999, and that they failed to prove they acted in good faith, without negligence or intent to defraud. *See* Stip. ¶¶ 14, 15; Stip. Exs. K (BOA NIS Dec. at 2), L (BOA CVC Dec. at 2).

[17] "[A] party appealing from a denial of a tax refund . . . has the burden of proof in a *de novo* proceeding before th[is Court]." *Sabatine v. Commonwealth*, 442 A.2d 210, 212 n.6 (Pa. 1981) (italics added). "Our scope of review in tax appeals is . . . limited to the construction, interpretation

6

483, 484 F.R. 2014, filed March 2, 2020). On April 1, 2020, the Commonwealth filed an Application to Redesignate the Court's Unreported Memorandum Opinion as a Reported Opinion (Application), to which no response was filed. Taxpayers timely filed the Exceptions seeking to reverse the Court's March 2, 2020 Opinion and grant their refund request.[18] The Commonwealth filed a brief in opposition to Taxpayers' Exceptions.[19]

## Discussion

### 1. Waiver

Preliminarily, in their initial appeal to this Court, Taxpayers "request[ed] relief pursuant to [Section 1983 of the United States Code,] 42 U.S.C. § 1983 [(relating to civil rights deprivation actions)] and attorney's fees pursuant to [Section 1988 of the United States Code,] 42 U.S.C. § 1988 [(relating to proceedings in vindication of civil rights)]." *See* Taxpayers' Initial Br. at 23. However, because Taxpayers failed to mention any civil rights violations in their Statement of Questions Involved and did not develop arguments in their brief to support any such claims, this Court ruled that Taxpayer waived those claims. *See Commonwealth v. Spotz*, 18 A.3d 244 (Pa. 2011) (such waiver applies to undeveloped constitutional rights claims); *Mun. of Mt. Lebanon v. Gillen*, 151 A.3d 722, 727 n.5 (Pa. Cmwlth. 2016) ("Appeal of an issue is waived where the appellant fails to include it in the statement

---

and application of a [s]tate tax statute to [the] given set of facts." *United Servs. Auto. Ass'n v. Commonwealth*, 618 A.2d 1155, 1156 (Pa. Cmwlth. 1992) (quoting *Escofil v. Commonwealth*, 406 A.2d 850, 852 (Pa. Cmwlth. 1979), *aff'd per curiam*, 452 A.2d 1012 (Pa. 1982)).

[18] "[E]xceptions filed pursuant to [Rule] 1571(i) have the effect of an order granting reconsideration." *Kalodner v. Commonwealth*, 636 A.2d 1230, 1231 (Pa. Cmwlth. 1994), *aff'd*, 675 A.2d 710 (Pa. 1995).

[19] Taxpayers filed a reply brief. The reply brief was identical to their principal brief in support of Exceptions. Relative to reply briefs, Rule 2113 specifies, in relevant part: "[T]he appellant may file a brief in reply to matters raised by appellee's brief . . . and not previously addressed in appellant's brief." Pa.R.A.P. 2113.

of questions involved section of [his/]her brief and fails to address the issue in the argument section of the brief.").

> Notwithstanding, in their brief in support of Exceptions, Taxpayers again
>
> > request[] relief pursuant to [Section 1983 of the United States Code,] 42 U.S.C. § 1983[,] [] attorney's fees pursuant to [Section 1988 of the United States Code,] 42 U.S.C. § 1988 [] and . . . fees and expenses pursuant to [the statute commonly known as the Costs Act (relating to fees and expenses for administrative agency actions)[20]].

Taxpayers' Exceptions Br. at 18. Therein, Taxpayers also include the following limited general argument:

> 1. The [] actions of the Commonwealth violate the [D]ue [P]rocess and Equal Protection clause[s] of the United States Constitution[21] and the Uniformity Clause of the Pennsylvania Constitution, the Pennsylvania Taxpayers['] Bill of Rights[22] and give rise to the right to attorney's fees pursuant to [Section 1983 of the United States Code,] 42 U.S.C. § 1983 [(relating to civil rights deprivation actions)].
>
> . . . .
>
> 4. [sic] The actions of the Commonwealth and its officials have deprived [] [T]axpayer[s] of property without the process of law in violation of Article I, [Sections] 9[ and] 10 of the Pennsylvania Constitution[, Pa. Const. art. I, §§ 9, 10,] and the due process clause of Section 1 of the Fourteenth Amendment of the United States Constitution[, U.S. Const. amend. XIV,] and the Commerce Clause of the U[nited] S[tates] Constitution.[23]
>
> 5. [sic] The administrative decisions further violate Article II, [Section] 1 of the Pennsylvania Constitution[, Pa. Const. art. II, § 1,] which requires that administration actions conform to the statue under which the action is taken and

---

[20] Act of December 13, 1982, P.L. 1127, *as amended*, 71 P.S. §§ 2031-2035. The Costs Act expired on July 1, 2007.

[21] U.S. Const. amend. XIV.

[22] Act of December 20, 1996, P.L. 1504, 72 P.S. §§ 3310-101 - 3310-402.

[23] U.S. Const. art. I, § 8, cl. 3.

8

> Article 8, [Section] 1 of the Pennsylvania Constitution[, Pa. Const. art. VIII, § 1,] requiring that all tax be uniform upon the same class of subjects.
>
> 6. [sic] [] Taxpayer[s] also reserve[] the right to raise any other issues and arguments that might present themselves on this matter.

Taxpayers' Exceptions Br. at 17. However, because Taxpayers previously waived any constitutional argument, and because they did not specifically raise these issues in their Exceptions, they are waived.[24] *See* Rule 1571(i) ("Issues not raised on exceptions are waived[.]").

### 2. Exceptions

In their Exceptions, Taxpayers claim that (a) they satisfied their burden of proving their entitlement to the $180,168.46 refund; (b) the Bankruptcy Court set aside the funds necessary for Taxpayers to satisfy their payroll tax obligations and the Commonwealth was on notice that those funds were available; and (c) they are entitled to prevail under the doctrine of estoppel by laches or collateral estoppel. Taxpayers made identical arguments in their initial appeal to this Court.[25]

---

[24] Despite this Court's warning in its March 2, 2020 Opinion, Taxpayers failed to raise these issues in their new Statement of Questions Involved. In fact, despite having raised four Exceptions, in their brief supporting the Exceptions, Taxpayers sole issue in the Statement of Questions Involved is: "Were [Taxpayers'] tax liabilities satisfied in full per the deposit into the escrow account as explained by [Taxpayers]?" *See* Taxpayers' Exceptions Br. at 7; *see also* Taxpayers' Exceptions Reply Br. at 7. Clearly, Taxpayers merely copied the Statement of Questions Involved from its initial brief on appeal. *See* Taxpayers' Initial Br. at 7 (Taxpayers' Exceptions Br. App. C at 7). Moreover, Taxpayers' purported constitutional arguments are nothing more than declarations without accompanying developed arguments, record citations, or legal authority.

[25] In their initial appeal, Taxpayers asserted that Integral set aside escrow funds for the express purpose of satisfying Taxpayers' state tax obligations and that Revenue's failure to timely claim those funds during the bankruptcy proceedings resulted in the Trustee using them to pay other debts and, thus, Revenue was estopped from thereafter collecting those monies from Taxpayers.

9

## a. Refund Entitlement

Here, as they did in their initial appeal, Taxpayers claim that they satisfied their burden of proving their entitlement to the $180,168.46 refund. In concluding that the Code required Taxpayers to withhold employee payroll taxes and hold them in trust for the Commonwealth, and further authorized Revenue to enforce liens against Taxpayers for the withheld monies, this Court reasoned:

Section 316(a) of the Code specifies:

> Every employer maintaining an office or transacting business within [the Commonwealth] and making payment of compensation (i) to a resident individual, or (ii) to a nonresident individual taxpayer performing services on behalf of such employer within this Commonwealth, shall deduct and withhold from such compensation for each payroll period a tax computed in such manner as to result, so far as practicable, in withholding from the employe's compensation during each calendar year an amount substantially equivalent to the tax reasonably estimated to be due for such year with respect to such compensation. The method of determining the amount to be withheld shall be prescribed by regulations of [Revenue].

72 P.S. § 7316.1(a). Section 320 of the Code clarifies:

> Every person[FN][18] required to deduct and withhold tax under [S]ection 316[(a) of the Code] is hereby made liable for such tax. For purposes of assessment and collection, any amount required to be withheld and paid over to [Revenue] and any additions to tax penalties and interest with respect thereto, shall be considered the tax of the person. All taxes deducted and withheld pursuant to [S]ection 316[(a) of the Code] or under color of [S]ection 316[(a) of the Code] shall constitute a trust fund for the Commonwealth and shall be enforceable against such person, his representative or any other person receiving any part of such fund.

10

72 P.S. § 7320. '[T]he employer has no right to this withholding once wages are paid; such withholding is commonly referred to as "trust fund tax" precisely because the employer holds it in trust for the [g]overnment.' *In re Dutch Masters Meats, Inc.*, 182 B.R. 405, 411 (Bankr. M.D. Pa. 1995). Accordingly, the Code required Taxpayers to withhold employee payroll taxes and hold them in trust for the Commonwealth, and further authorized Revenue to enforce liens against Taxpayers for the withheld monies.

> [FN][18] Section 201(e) of the Code defines 'person' as '[a]ny natural person, association, fiduciary, partnership, corporation or other entity . . . . Whenever used in any clause prescribing and imposing a penalty . . . the term "person," . . . as applied to a corporation, [shall include] the officers thereof.' 72 P.S. § 7201(e). This Court has ruled that a corporate officer can be personally liable for a corporation's withholding taxes during periods in which he controlled the corporation. *Brown v. Commonwealth*, 670 A.2d 1222 (Pa. Cmwlth. 1996).

*Mandler*, slip op. at 9-10. Accordingly, this Court concluded that Taxpayers did not satisfy their burden of proving entitlement to the $180,168.46 refund. After review, this Court discerns no error in its March 2, 2020 conclusion.

### b. Bankruptcy Proceedings

Taxpayers also argue that the Bankruptcy Court set aside the funds necessary for Taxpayers to satisfy their payroll tax obligations and the Commonwealth was on notice that those funds were available. Taxpayers made an identical argument in their initial appeal. Therein, this Court concluded that the Board properly denied Taxpayers relief because employer-withheld income taxes were trust fund taxes which were not dischargeable in bankruptcy, based on the following analysis:

Section 523(a)(1)(A) of the Bankruptcy Code provides:

11

A discharge under [Chapter 7 of the Bankruptcy Code] does not discharge an individual debtor from any debt . . . for a tax . . . of the kind and for the periods specified in [S]ection . . . 507(a)(8) of [the Bankruptcy Code], whether or not a claim for such tax was filed or allowed[.[FN19]]

> [FN19] A taxing body's failure to file a proof of claim bars it from obtaining a distribution from the estate in a bankruptcy proceeding, but does not affect its authority to collect the tax debt. *City of Phila. v. Carpino*, 915 A.2d 169 (Pa. Cmwlth. 2006).

11 U.S.C. § 523(a)(1)(A). Section 507(a) of the Bankruptcy Code specifies:

The following expenses and claims have priority in the following order: . . . [A]llowed unsecured claims of governmental units, only to the extent that such claims are for . . . a tax required to be collected or withheld and for which the debtor is liable in whatever capacity[.]

11 U.S.C. § 507(a).

Further, the United States Bankruptcy Court for the Northern District of Illinois, has ruled that 'taxes described in [Section] 507(a)([8])(C) [of the Bankruptcy Code], often referred to as 'trust fund' taxes, are never dischargeable[,] no matter how long the unpaid tax obligations have been outstanding. 1 Robert E. Ginsberg, *Bankruptcy* § 11.06[b] at 899 (2[]d ed. 1989).' *In re Torres*, 117 B.R. 379, 384 (Bankr. N.D. Ill. 1990); *see also Dutch Masters Meats, Inc.*, 182 B.R. at 411 ('It is because of th[e] trust relationship that, unlike other tax obligations, trust fund taxes are nondischargeable . . . .'). Therefore, whether or not Revenue filed claim petitions for them, and no matter how much time has passed, the Taxes were trust fund taxes that Taxpayers could not discharge in a Chapter 7 bankruptcy proceeding.

Taxpayers' claim that the Chapter 7 bankruptcy proceeding relieved them of their liability for the Taxes because the escrowed funds were 'for the sole purpose of paying the [Taxes] . . .' is meritless. Taxpayers' [Initial] Br. at 14.

This Court acknowledges that, pursuant to the Settlement Order, Integral agreed to, and paid into an escrow account, monies 'to fund payments to state taxing authorities.' Stip. Ex. B at 8. However, neither the Settlement Order nor the May 1 and June 12, 2001 escrow letters, or any other record document, specifies that the escrowed funds were set aside for the express purpose of satisfying the Taxes. A taxpayer's bare assertions are generally insufficient proof in tax cases. *See Camp Hachshara Moshava of New York v. Wayne C[n]ty. Bd. for Assessment [&] Revision of Taxes*, 47 A.3d 1271 (Pa. Cmwlth. 2012); *see also Fiore v. Commonwealth*, 668 A.2d 1210 (Pa. Cmwlth. 1995), *aff'd*, 690 A.2d 234 (Pa. 1997); *Bruce & Merrilees Elec. Co. v. Commonwealth*, 530 A.2d 994 (Pa. Cmwlth. 1987).

The record likewise belies Taxpayers' assertion that 'adequate cash funds had been set aside by [the Settlement Order] to pay to [Revenue] the [Taxes] . . . .' Taxpayers' [Initial] Br. at 13. It is evident from the Proposed Plan that Taxpayers knew they owed more than $300,000.00 in various state taxes and, based on the amended proofs of claim, they were aware that more than $180,000.00 thereof was owed to Revenue for the Taxes. *See* Stip. Ex. C at 3-5, 8-9, 11 and Ex. P at 13. Notwithstanding, only $66,215.49 was placed into the state tax escrow account, which was clearly inadequate to satisfy Taxpayers' liability for the Taxes. *See* Stip. ¶¶ 37-38, Stip. Exs. R, S.

In addition, there is no record evidence that Revenue was aware that the escrowed funds existed. Taxpayers did not point to any record notifying Revenue about the escrowed funds. The May 1 and June 12, 2001 escrow letters [we]re neither addressed nor copied to Revenue, and Revenue was not a party to the Settlement Order.[FN20] A settlement agreement is essentially a contract that is binding on the parties thereto, and is governed by contract law principles. *Roe v. Pa. Game Comm'n*, 147 A.3d 1244 (Pa. Cmwlth. 2016). A 'general principle of contract law [is] that an agreement cannot legally bind persons who are not parties [thereto].' *Chambers Dev. Co., Inc. v. Commonwealth ex rel. Allegheny C[n]ty. Health Dep't*, 474 A.2d 728, 731 (Pa. Cmwlth. 1984). Here, the Settlement Order declared: 'Nothing in this [Settlement Order] may be relied upon or is intended for the benefit of any party other [than] those who have executed this [Settlement Order] below.' Stip. Ex. B

13

at 10, ¶ 20. Therefore, notwithstanding Taxpayers' claims to the contrary, neither the Settlement Order nor any other record document informed Revenue about the escrowed funds.

Based on the foregoing, the Board properly denied Taxpayers relief, because employer-withheld income taxes are trust fund taxes which are not dischargeable in bankruptcy. The Board further reasoned:

> [T]he [Settlement Order] does not prohibit [Revenue] from collecting the outstanding employer withholding liability from [Taxpayers]. [Revenue] was not a party to [the Settlement Order], as a representative of [Revenue] did not sign the [Settlement Order]. The [Settlement Order] merely required that [Taxpayers'] assets transfer to Integral free of encumbrances, and it did not remove [Taxpayers'] liability for the [T]ax[es]. Lastly, the documentation provided by [Taxpayers] fails to show that the funds were set aside specifically for [Revenue], as [Taxpayers] owed tax liabilities to multiple states.

>> [FN20] The IRS negotiated and was a party to the Settlement Order. *See* Stip. Ex. B at 7-9, 13.

Stip. Exs. M (Board NIS Dec. at 5), L (Board CVC Dec. at 4-5); *see also* Stip. ¶¶ 30-31.

*Mandler*, slip op. at 10-13.

Accordingly, this Court concluded that the Board properly denied Taxpayers relief because employer-withheld income taxes were trust fund taxes that were not dischargeable in bankruptcy, and funds were not set aside to satisfy the Taxes. After review, this Court discerns no error in its March 2, 2020 conclusion.

### c. Estoppel

Lastly, Taxpayers claim that the doctrine of estoppel barred Revenue from collecting the Taxes in 2013 because it failed to claim them during the

14

bankruptcy proceedings. As alleged in their initial appeal, Taxpayers specifically contend that Revenue is estopped by laches. This Court declared that argument to be without merit based on the following:

> This Court has held that '[e]quitable estoppel [and] laches . . . cannot vary the statutory requirements in the [Code]. Neither the [Board] nor this Court has the power to alter . . . the [Code] based on equitable principles.' *Quest Diagnostics Venture, LLC v. Commonwealth*, 119 A.3d 406, 413-14 (Pa. Cmwlth. 2015), *aff'd*, 148 A.3d 448 (Pa. 2016) (citations omitted).
>
>> [I]n order to apply the doctrine of equitable estoppel to a Commonwealth agency: the party sought to be estopped [(]1) must have intentionally or negligently misrepresented some material *fact*[;] [(]2) know[n] or ha[d] reason to know that the other party would justifiably rely on the misrepresentation[;] and [(]3) induc[ed] the other party to act to his detriment because of his justifiable reliance on the misrepresentation. In addition, '[o]ne who asserts estoppel must establish the essential elements thereof by clear, precise, and unequivocal evidence.' [*Pa. Liquor Control Bd. v. Venesky*, 516 A.2d 445,] 448 [(Pa. Cmwlth. 1986)].
>
> *Yurick v. Commonwealth*, 568 A.2d 985, 990 (Pa. Cmwlth. 1989) (emphasis added). However, '"estoppel cannot be created by representations or opinions concerning matters of *law*."' *Id.* at 990 (quoting *Gabovitz v. State Auto. Ins. Ass'n*, 523 A.2d 403, 406 (Pa. Super. 1987) (citations omitted)) (emphasis added). This Court has more specifically concluded that '[n]o errors or misinformation . . . can estop the government from collecting taxes legally due.' *Am. Elec. Power Serv. Corp. v. Commonwealth*, 160 A.3d 950, 960 (Pa. Cmwlth. 2017) (quoting *DS Waters of Am., Inc. v. Commonwealth*, 150 A.3d 583, 592 (Pa. Cmwlth. 2016)); *see also Yurick*.
>
> 'The essence of any claim of laches is an estoppel as a result of prejudicial delay.' *Stahl v. First Pa. Banking & Tr. Co.*, 191 A.2d 386, 390 (Pa. 1963); *see also Commonwealth ex rel. Pa. Attorney Gen. Corbett v. Griffin*,

15

946 A.2d 668, 676 n.9 (Pa. 2008) ('[T]he doctrine of laches contains an estoppel component . . . , and it is sometimes referred to as estoppel by laches.)' (quotation marks omitted)[].

> "[L]aches . . . bars relief when a . . . party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another." *Stilp v. Hafer*, . . . 718 A.2d 290, 292 ([Pa.] 1998); *accord Sprague v. Casey*, . . . 550 A.2d 184, 187 ([Pa.] 1988). . . . Whether laches applies is a question of law. . . . However, applicability of the doctrine of laches is a factual determination made on a case-by-case basis. []

*Wheels Mech. Contracting & Supplier, Inc. v. W. Jefferson Hills Sch. Dist.*, 156 A.3d 356, 362 (Pa. Cmwlth. 2017).

> Historically, our Supreme Court has been reluctant to permit a party to assert the doctrine of laches against a state's exercise of its taxing power. *See, e.g., Commonwealth v. W*[.] *M*[d.] [*R.R.*] *Co*[.], . . . 105 A.2d 336 ([Pa.] 1954) . . . (cannot estop the government from collecting taxes which are legally due); *Commonwealth v. A.M. Byers Co*[.], . . . 31 A.2d 530 ([Pa.] 1943) (no estoppel can be asserted against the Commonwealth in the exercise of its taxing power). In the *Western Maryland Railway Co*[.][, formerly *Western Maryland Railroad Co.*,] case, ou[r] Supreme Court held that the laches defense could not be asserted so as to prevent the state from collecting legally due taxes on property when it failed to assess the same for a number of years. Further, in that case, the [Supreme] Court held that a state or other sovereignty cannot be estopped by any acts or conduct of its officers or agents in the performance of a governmental function and that no errors or misinformation of the officers or agents can estop the government from collecting legally due taxes.

*In re Estate of Trowbridge*, 920 A.2d 901, 906 n.5 (Pa. Cmwlth. 2007); *see also Borough of Braddock v. Sullivan Plumbing, Inc.*, 954 A.2d 672 (Pa. Cmwlth. 2008). Although courts have held that a taxing authority's delay

16

may bar its claims for interest and penalties attributable thereto, the courts have consistently upheld the imposition of the underlying taxes owed. *See W. Md. R.R. Co.*; *see also Borough of Braddock*; *In re Estate of Leitham*, 726 A.2d 1116 (Pa. Cmwlth. 1999).

In the instant matter, pursuant to Section 523(a)(1)(A) of the Bankruptcy Code and Sections 316(a) and 320 of the Code, regardless of when or whether Revenue claimed the Taxes, the record reflects that Taxpayers collected the Taxes, Taxpayers were aware that they owed them, and Taxpayers were at all times liable for them. Moreover, Taxpayers were cognizant of Revenue's ongoing attempts to collect the Taxes. Revenue filed proofs of claim for the Taxes on October 6, 2000[,] relative to Taxpayers' Chapter 11 reorganization cases, and amended proofs of claim relative to their Chapter 7 liquidation proceedings in September and November 2001. From October 2000 to September 2001, Revenue issued assessment notices to Taxpayers for the Taxes. Revenue also filed liens for the Taxes in 2002 and 2005. In 2013, Revenue sought and Taxpayers paid the outstanding liens. Taxpayers did not prove based on the record before this Court that Revenue intentionally or negligently misrepresented any material fact that induced Taxpayers to act to their detriment, *Yurick*, or that any lack of due diligence by Revenue prejudiced Taxpayers. *Wheels Mech. Contracting & Supplier, Inc.* Accordingly, Taxpayers' equity arguments fail.

*Mandler*, slip op. at 13-16.

In their brief in support of Exceptions, Taxpayers nevertheless argue that, in 1999, in *Leitham*, this Court applied the doctrine of estoppel by laches to preclude the Commonwealth's collection of past due taxes. Indeed, in *Leitham*, this Court held that Revenue's assessment against an estate (Estate) for inheritance taxes on a decedent's retirement plan proceeds eight years after its statutory deadline was barred by estoppel by laches.[26] The *Leitham* Court acknowledged that, in

---

[26] Therein,

> [t]he Estate reported the proceeds of [the decedent's] retirement plan as $180,224.26 on its federal estate tax return. Because the Estate did

*Department of Public Welfare v. UEC, Inc.*, 397 A.2d 779 (Pa. 1979), the Pennsylvania Supreme Court ruled that estoppel can be asserted against the government. The *Leitham* Court explained:

> Courts nonetheless retain a general reluctance to apply the estoppel doctrine against the government and therefore will require a stronger showing when estoppel is asserted against a governmental entity than when it is asserted against an individual. *Weinberg v. State B[d.] of Examiners of Pub[.] Accountants*, . . . 501 A.2d 239 ([Pa.] 1985).

---

> not believe that the retirement plan was subject to Pennsylvania inheritance tax, it did not report this asset on its Pennsylvania inheritance tax return and, accordingly, paid no inheritance tax on the retirement plan to this Commonwealth. The Estate, however, included a copy of its federal return with its Pennsylvania return, and both returns were filed with the appropriate authorities on June 27, 1988. The Estate also distributed real estate in the decedent's will subject to certain real estate expenses incident to transfer of the property and deducted $4,491.50 in expenses on its Pennsylvania return. Thereafter, the personal representative received her commission, distributed the remaining assets to the beneficiaries and closed the Estate.

*Leitham*, 726 A.2d at 1117.

> The undisputed facts of this case amply establish the essential elements of estoppel by laches. The retirement plan was disclosed on the Estate's federal return, and thus the necessary information was within the possession and knowledge of [Revenue]. During the years since [Revenue] failed to file a timely appraisement, determination or assessment, the Estate ha[d] been closed and all assets distributed to the beneficiaries. Defending against or complying with the [assessment] now presents an unfair hardship for the Estate. *See In re Ramsay's Estates*, . . . 20 A.2d 213 ([Pa.] 1941). [Revenue] offers no explanation that would justify its delay.

*Id.* at 1119.

In *Ramsay's Estates*, the Pennsylvania Supreme Court upheld an orphan court's decree setting aside the Commonwealth's supplemental appraisement filed nearly five years after an estate was settled because it was unclear whether deeds of trust were known when the first appraisement was issued, and the Commonwealth failed to show some later-discovered fraud, accident, mistake or concealment, to warrant the filing of a second appraisement.

18

These modern advances in case law left intact the principle which the Supreme Court enunciated in [*Western Maryland Railroad Co.*]. In that case, the Supreme Court held that 'failure to collect the tax in the past is no bar to present collection.' *UEC*, . . . 397 A.2d [at 785] n[.]6 (discussing *Western Maryland R.R. Co.*); *Weinberg*, . . . 501 A.2d at 243 n[.]5 (quoting *UEC*). Unlike the appellant in *Western Maryland* [*Railroad*] *Co.*, however, the Estate does not seek insulation from future tax liability. The Estate instead asserts estoppel by laches against [Revenue's] appraisement, determination and assessment of the specific tax liability that became due upon [the decedent's] death, which [Revenue] failed to claim with due diligence. Because the Estate does not seek to bar present collection of taxes, but instead seeks to estop [Revenue's] claim for taxes previously due, the *Western Maryland* [*Railroad*] *Co.* principle is inapposite to the instant case.

The Court recognizes that it applied the *Western Maryland* [*Railroad*] *Co.* principle in *Kirkpatrick v. Butler County Commissioners*, . . . 298 A.2d 607 ([Pa. Cmwlth.] 1972), to prevent a taxpayer from asserting estoppel against a county attempting to collect taxes previously due based on the county's intervening errors. Any distinctions between the Court's outcome in *Kirkpatrick* and the outcome today merely illustrate the settled principle that 'the application of laches involves a factual determination and an ad hoc balancing of conflicting interests in each case.' *Weinberg*, . . . 501 A.2d at 243. Moreover, *Kirkpatrick* was decided before the Supreme Court's decisions in *UEC* and *Weinberg*. Since *UEC* was decided[,] this Court has approved application of the doctrine of estoppel to limit the Commonwealth's efforts to collect taxes previously due under appropriate circumstances. *See Dep*[*'t*] *of Revenue, Bureau of Sales* [*&*] *Use Tax v. King Crown Corp.*, . . . 415 A.2d 927 ([Pa. Cmwlth.] 1980).

*Leitham*, 726 A.2d at 1120.

Nine years after *Leitham*, this Court decided *Borough of Braddock*, wherein this Court reiterated: "Application of the doctrine [of laches] depends not just on the passage of time but on whether, under the circumstances, the complaining party's lack of due diligence actually does prejudice the other party. Therefore, the

19

question is to be determined by examining the factual circumstances of each case." *Id.* at 674 (citation omitted). In *Borough of Braddock*, the borough waited until 2003 to collect business privilege taxes owed by a contractor from 1994 to 2003. The contractor claimed that the borough was barred by the doctrine of laches from collecting those past due taxes. The trial court held that the contractor owed the taxes plus interest and penalties. On appeal, this Court examined *Leitham* and concluded based on the laches defense that the contractor did not owe interest and penalties because the contractor would not "knowingly and willingly incur liability for interest and penalties for a period of ten years, and its incurring such liability constituted a change in the parties' condition during the period that the [b]orough failed to act." *Borough of Braddock*, 954 A.2d at 677. The Court nevertheless upheld the trial court's holding that the contractor owed the underlying taxes, ruling that the borough's delay in collecting them did not change the fact that the contractor owed them. Therefore, notwithstanding *Leitham*, *Borough of Braddock* represents established precedent, which this Court observed in its March 2, 2020 Opinion, that "the courts have consistently upheld the imposition of the underlying taxes owed." *Mandler*, slip op. at 15.

In the instant matter, Taxpayers' sole argument in support of their estoppel by laches defense is that the "requirements are clearly satisfied by the facts of [this] case[:] (1)[] [Revenue] failed to claim the funds set aside . . . [; and] (2)[] [t]here was prejudice to [Taxpayers] by [Revenue's] failure to claim these funds." Taxpayers' Exceptions Br. at 14. However, the record is devoid of evidence to support Taxpayers' conclusion. First, based on the stipulated facts, no funds were set aside in the bankruptcy proceeding to satisfy Revenue's liens for the Taxes and, thus, Revenue could not have claimed them. Second, Taxpayers' conclusory declaration that "there was prejudice," alone, is insufficient to establish prejudice. Taxpayers' Exceptions Br. at 14. Third, Taxpayers owed the Taxes. Accordingly, this Court

20

discerns no error in its March 2, 2020 conclusion that the doctrine of estoppel by laches did not bar Revenue from collecting the Taxes in 2013.

In addition, Taxpayers newly contend in the Exceptions that Revenue was barred by collateral estoppel from collecting the Taxes in 2013 because it failed to claim them during the bankruptcy proceedings.

> Collateral estoppel or issue preclusion forecloses relitigation in a subsequent action of a necessary issue that was actually litigated in a prior proceeding. *Lamborn v. Workmen's Comp*[.] *Appeal B*[*d.*] *(A*[]*moroso Baking)*, 656 A.2d 593 (Pa. Cmwlth. 1995). Accordingly, collateral estoppel will apply if:
>
> > [(]1) the issue decided in the prior adjudication was identical with the one presented in the later action[;] [(]2) there was a final judgment on the merits[;] [(]3) the party against whom the plea is asserted was a party . . . to the prior adjudication[;] and [(]4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.
>
> *Safeguard Mut*[.] *Ins*[.] *Co. v. Williams*, . . . 345 A.2d 664, 668 ([Pa.] 1975) (citations omitted).

*In re Judicial Sale, Tax Claim Bureau of Northampton Cnty., Easton, Pa.*, 720 A.2d 818, 822 (Pa. Cmwlth. 1998).

After reciting collateral estoppel principles in their brief in support of Exceptions, Taxpayers offered no specific argument on that issue beyond their declaration: "[Taxpayers] have clearly met the requirements for applying collateral estoppel to this case and the application of collateral estoppel to this case precludes the Commonwealth from denying that these funds were not set aside for them and they should have claimed them." Taxpayers' Exceptions Br. at 16. However, it is clear from the stipulated facts that the parties and the issues presented here differ from those litigated in the bankruptcy proceeding and, since Revenue's liens for the

21

Taxes were not satisfied in the bankruptcy proceeding, the bankruptcy proceeding did not represent a final judgment as to the Taxes. Accordingly, Taxpayers have failed to establish their claim that collateral estoppel barred Revenue from collecting the Taxes in 2013 because it failed to claim them during the bankruptcy proceedings.

## Conclusion

With the exception of Taxpayers' new collateral estoppel argument, which does not apply here,

> Taxpayers' [E]xceptions . . . raise precisely the same issues that they raised in their initial appeal. . . .
>
> After reviewing our previous opinion and revisiting the arguments Taxpayers presented in their briefs . . . , we concur with both the result and the reasoning of this Court's [O]pinion of [March 2, 2020]. None of the authority cited by Taxpayers changes our conclusion or the rationale of that [O]pinion.
>
> Accordingly, we [overrule] Taxpayers' [E]xceptions.

*Kalodner v. Commonwealth*, 636 A.2d 1230, 1231-32 (Pa. Cmwlth. 1994) (citation omitted), *aff'd*, 675 A.2d 710 (Pa. 1995).[27]

_____
ANNE E. COVEY, Judge

---

[27] Because this is a reported Opinion, the Commonwealth's Application is denied as moot.

Jeffrey M. Mandler and Nuclear   :
Imaging Systems, Inc.,   :
           Petitioners   :
  :
      v.   :
  :
Commonwealth of Pennsylvania,   :   No. 483 F.R. 2014
           Respondent   :
  :
Jeffrey M. Mandler and Cardiovascular   :
Concepts, P.C.,   :
           Petitioners   :
  :
      v.   :
  :
Commonwealth of Pennsylvania,   :   No. 484 F.R. 2014
           Respondent   :

# O R D E R

AND NOW, this 3rd day of March, 2021, the exceptions filed by Jeffrey M. Mandler, Nuclear Imaging Systems, Inc. and Cardiovascular Concepts, P.C. to this Court's March 2, 2020 Opinion and Order are OVERRULED, and the Prothonotary is directed to enter judgment in favor of the Commonwealth of Pennsylvania (Commonwealth).

The Commonwealth's Application to Redesignate the Court's Unreported Memorandum Opinion as a Reported Opinion is DENIED as moot.

_____
ANNE E. COVEY, Judge